UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JENNIFER STEPHENSON,

       Plaintiff,                        Hon. Janet T. Neff

v.                                              Case No. 1:20-cv-906

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.
_____/

## REPORT AND RECOMMENDATION

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act. Section 405(g) limits the Court to a review of the administrative record and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive. Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that the Commissioner's decision be affirmed.

## STANDARD OF REVIEW

The Court's jurisdiction is limited to a review of the Commissioner's decision and of the record made in the administrative hearing process. *Tucker v. Commissioner of Social Security*, 775 Fed. Appx. 220, 225 (6th Cir., June 10, 2019). The scope of judicial review in a social security case is limited to determining whether

the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *Id.* at 224-25. Substantial evidence is more than a scintilla, but less than a preponderance, and constitutes such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Livingston v. Commissioner of Social Security*, 776 Fed. Appx. 897, 898 (6th Cir., June 19, 2019).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *Biestek v. Commissioner of Social Security*, 880 F.3d 778, 783 (6th Cir. 2017). The substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *Moruzzi v. Commissioner of Social Security*, 759 Fed. Appx. 396, 402 (6th Cir., Dec. 21, 2018). This standard affords to the administrative decision maker considerable latitude and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *Luukkonen v. Commissioner of Social Security*, 653 Fed. Appx. 393, 398 (6th Cir., June 22, 2016).

## BACKGROUND

Plaintiff was 31 years of age on her alleged disability onset date. (ECF No. 11-5, PageID.190). She successfully completed high school and worked previously as a telephone solicitor, waitress, and sales representative. (ECF No. 11-2, PageID.49-50). Plaintiff applied for benefits on July 11, 2018, alleging that she had

been disabled since February 20, 2015, due to post-traumatic stress disorder (PTSD), anxiety, depression, and an unspecified "issue with [her] clavicle." (ECF No. 11-5, 11-6, PageID.190-204, 270).

Plaintiff's applications were denied, after which time she requested a hearing before an Administrative Law Judge (ALJ). Following an administrative hearing, ALJ David Read, in an opinion dated September 27, 2019, determined that Plaintiff did not qualify for disability benefits. (ECF No. 11-2, PageID.43-84). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (*Id.*, PageID.29-33). Plaintiff subsequently initiated this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

## ANALYSIS OF THE ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f). If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a non-exertional impairment as well as an exertional impairment, both are considered in determining her residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

Plaintiff bears the burden to demonstrate she is entitled to disability benefits and she satisfies her burden by demonstrating that her impairments are so severe that she is unable to perform her previous work, and cannot, considering her age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A). While the burden of proof shifts to the Commissioner at step five of the sequential evaluation process, Plaintiff bears the burden of proof through step four of the procedure, the point at which her residual functioning capacity (RFC) is determined. *O'Neal v. Commissioner of Social Security*, 799 Fed. Appx. 313, 315 (6th Cir., Jan. 7, 2020).

The ALJ determined that Plaintiff suffers from: (1) PTSD; (2) depression; (3) borderline intellectual functioning; (4) status-post fractured left clavicle; (5) status-post surgery of left shoulder; (6) diabetes; and (7) obesity, severe impairments that whether considered alone or in combination with other impairments, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (ECF No. 11-2, PageID.45-47).

With respect to Plaintiff's residual functional capacity, the ALJ determined that Plaintiff retained the ability to perform light work subject to the following limitations: (1) regarding her non-dominant left upper extremity, she can never reach overhead, but can frequently reach in other directions; (2) she can occasionally climb

ramps, stairs, ladders, ropes, and scaffolds; (3) she can occasionally crouch; (4) she can perform simple, routine, and repetitive tasks but not at a production rate (e.g., assembly line) pace; (5) she can occasionally interact with the general public; (6) she can work with occasional changes in tasks or demands; and (7) she will be off-task less than ten percent of the time during an 8-hour workday. (*Id.*, PageID.47).

The ALJ found that Plaintiff was unable to perform her past relevant work at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that there exists in the national economy a significant number of specific jobs which Plaintiff can perform, her limitations notwithstanding. *O'Neal*, 799 Fed. Appx. at 316. In satisfying this burden, the ALJ may rely on a vocational expert's testimony. *Ibid.*

In this case, a vocational expert testified that there existed approximately 490,000 jobs in the national economy which an individual with Plaintiff's RFC could perform, such limitations notwithstanding. (ECF No. 11-2, PageID.76-81). This represents a significant number of jobs. *See, e.g., Taskila v. Commissioner of Social Security*, 819 F.3d 902, 905 (6th Cir. 2016) ("[s]ix thousand jobs in the United States fits comfortably within what this court and others have deemed 'significant'"). Accordingly, the ALJ concluded that Plaintiff was not entitled to benefits.

## I. Statement of Errors

On May 13, 2021, the Court entered a "Notice Regarding Consent and Directing Filing of Briefs." (ECF No. 12). In relevant part, this Notice stated that Plaintiff's initial brief "must contain a Statement of Errors, setting forth in a separately numbered section, each specific error of fact or law upon which Plaintiff seeks reversal or remand." (ECF No. 12, PageID.776). As the Notice further stated, "[f]ailure to identify an issue in the Statement of Errors constitutes a waiver of that issue." (*Id.*).

Plaintiff has failed to comply with this requirement. Neither her initial brief nor reply brief contain a Statement of Errors or other statement or articulation of the errors that Plaintiff alleges entitle her to relief. In the absence of such, the Court is left to guess at the issue(s) raised by Plaintiff's appeal. Accordingly, the Court recommends that Plaintiff has waived all arguments in favor of relief.

In the event this recommendation is rejected, the Court has reviewed Plaintiff's pleadings in an attempt to discern the issue(s) Plaintiff is attempting to assert in this appeal. Plaintiff appears to be asserting the two claims addressed below, neither of which entitle Plaintiff to relief.

## II.    Plaintiff's RFC

A claimant's RFC represents the "most [a claimant] can still do despite [her] limitations." *Sullivan v. Commissioner of Social Security*, 595 Fed. Appx. 502, 505 (6th Cir., Dec. 12, 2014); *see also*, Social Security Ruling 96-8P, 1996 WL 374184 at *1 (Social Security Administration, July 2, 1996) (a claimant's RFC represents her ability to perform "work-related physical and mental activities in a work setting on a regular and continuing basis," defined as "8 hours a day, for 5 days a week, or an equivalent work schedule"). The ALJ concluded that Plaintiff can perform a limited range of light work. Plaintiff appears to argue that the ALJ's RFC finding is not supported by substantial evidence.

A.    Plaintiff's Emotional Impairments

On March 16, 2015, Plaintiff participated in a consultive examination conducted by Elaine Tripi, Ph.D. (ECF No. 11-10, PageID.592-95). As part of this examination, the doctor completed a Mental RFC Assessment. (*Id.*, PageID.597-600). Specifically, the doctor assessed Plaintiff's abilities in twenty different categories encompassing (1) understanding and memory; (2) sustained concentration and persistence; (3) social interaction; and (4) adaptation. The doctor rated Plaintiff's limitations as "extreme" in four categories, "marked" in nine categories, and "moderate" in seven categories. (*Id.*, PageID.598-600). The doctor diagnosed Plaintiff with PTSD and concluded that she "is unemployable." (*Id.*, PageID.594).

On May 11, 2015, Plaintiff participated in a consultive examination conducted by Jonathan Shy, Ph.D.  (ECF No. 11-7, PageID.310-13).  Plaintiff appeared depressed, but the results of a mental status examination were otherwise unremarkable.  (*Id.*, PageID.312).  The doctor also noted that Plaintiff "appears to have no limitations in her capability to understand, retain and follow simple instructions and to perform and complete simple tasks."  (*Id.*, PageID.313).

On November 2, 2018, Plaintiff participated in a consultive examination conducted by Michael Brady, Ph.D.  (ECF No. 11-10, PageID.587-90).  Plaintiff reported that on a typical day she cleans the house, prepares meals, watches television, and looks for a job.  (*Id.*, PageID.588).  The results of a mental status examination indicated "abnormalities in concentration and calculation tasks," but were otherwise unremarkable.  (*Id.*, PageID.588-89).  The doctor diagnosed Plaintiff with PTSD and concluded:

> [Plaintiff's] ability to relate and interact with others, including coworkers and supervisors, is moderately impaired.  Her anxiety and distress could affect her interpersonal relationships in the workplace.  Her ability to understand, recall, and complete tasks and expectations does not appear to be significantly impaired.  Her ability to maintain concentration was moderately impaired.  As a result of her emotional state she may often be distracted and her effectiveness and performance will likely be limited and slowed.  Her ability to withstand the normal stressors associated with a workplace setting is moderately impaired.

(*Id.*, PageID.590).

In May 2019, Plaintiff began participating in regular therapy with Barry Mintzes, Ph.D. (ECF No. 11-10, PageID.608-31). On August 29, 2019, Dr. Mintzes completed a Mental RFC Assessment. (*Id.*, PageID.632-33). Specifically, the doctor evaluated Plaintiff's abilities in 20 different categories encompassing (1) understanding and memory; (2) sustained concentration and persistence; (3) social interaction; and (4) adaptation. The doctor rated Plaintiff as "moderately limited" in eleven categories and "not significantly limited" in six categories. (*Id.*). The doctor further reported that Plaintiff exhibited "no evidence of limitation" in three categories. (*Id.*).

As Defendant notes, the record also contains numerous treatment notes indicating that Plaintiff exhibited normal mood, affect, judgment, and speech. (*See* PageID.368, 379, 412, 418, 429, 446, 450, 453, 460, 465, 474, 484, 488, 496, 501, 582).

B.   Plaintiff's Physical Limitations

On January 11, 2018, Plaintiff fell down a set of stairs fracturing her left clavicle. (ECF No. 11-9, PageID.510-14). On January 23, 2018, Plaintiff underwent an "open reduction and internal fixation" surgical procedure to repair her shoulder. (ECF No. 11-10, PageID.530-31). X-rays of Plaintiff's left shoulder, taken April 26, 2018, revealed "postsurgical changes" with "no evidence for acute fracture or dislocation" and "no acute osseous abnormality." (ECF No. 11-7, PageID.355). Plaintiff subsequently fell on her injured shoulder which "dislodged the screws and plate" which had been inserted to repair her broken clavicle. (*Id.*, PageID.330).

On May 1, 2018, Plaintiff underwent a second procedure to "remove the plate and screws, and remove the distal fragment of bone, which was about a centimeter in length. . ." (ECF No. 11-7, PageID.330). Treatment notes dated June 14, 2018, reveal that Plaintiff exhibited "normal range of motion" with no evidence of swelling or deformity. (ECF No. 11-8, PageID.395). X-rays of Plaintiff's left shoulder likewise "did not reveal any acute findings." (*Id.*). A November 2, 2018, examination revealed decreased sensation and range of motion in Plaintiff's left shoulder. (ECF No. 11-10, PageID.585).

The ALJ is tasked with determining a claimant's RFC. *See* 20 C.F.R. §§ 404.1546(c), 416.946(c). While the ALJ may not "play doctor" and substitute his own opinion for that of a medical professional, the ALJ is not required to tailor his RFC assessment to any particular opinion or item of medical evidence. *See, e.g., Poe v. Commissioner of Social Security*, 342 Fed. Appx. 149, 157 (6th Cir., Aug. 18, 2009). Instead, the ALJ is "charged with the responsibility of evaluating the medical evidence and the claimant's testimony to form an assessment of her residual functional capacity." *Webb v. Commissioner of Social Security*, 368 F.3d 629, 633 (6th Cir. 2004).

The Court recognizes that Plaintiff experiences severe impairments that limit her ability to function. For example, Plaintiff's ability to use her left shoulder is limited, but the ALJ has sufficiently accounted for such. The medical evidence does not suggest the need for greater limitation. Moreover, there is no indication in the

record that any of Plaintiff's care providers imposed on Plaintiff functional limitations which are inconsistent with the ALJ's RFC assessment.

As for Plaintiff's emotional impairments, again, there is no dispute that Plaintiff experiences limitations. The ALJ sufficiently accounted for such, however. The contemporaneous treatment notes identified above are consistent with the ALJ's findings. While consultive examiners indicated that Plaintiff experiences "moderate" limitations in various areas of functioning, none of the examiners articulated specific functional limitations which are inconsistent with the ALJ's RFC assessment. Plaintiff's argument to the contrary is that the ALJ should have weighed the evidence differently which is not a basis for relief. Accordingly, this argument is rejected.

### III. Vocational Expert Testimony

As noted above, the ALJ, based upon the testimony of a vocational expert, determined that there existed a significant number of jobs which Plaintiff could perform despite her limitations. Plaintiff appears to argue that the ALJ improperly relied on the vocational expert's testimony.

At Step V of the sequential evaluation process, the ALJ may satisfy his burden through the use of hypothetical questions posed to a vocational expert so long as such questions accurately portray Plaintiff's physical and mental impairments. *See Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 150 (6th Cir. 1996). The hypothetical question which the ALJ posed to the vocational expert simply asked whether there existed jobs which an individual could perform consistent with Plaintiff's RFC, to which the

-11-

vocational expert indicated that there existed a significant number of such jobs. The ALJ's RFC determination is supported by substantial evidence and there was nothing improper or incomplete about the hypothetical questions the ALJ posed to the vocational expert. The Court concludes, therefore, that the ALJ properly relied upon the vocational expert's testimony.

## **CONCLUSION**

For the reasons stated herein, the undersigned recommends that the Commissioner's decision be affirmed.

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within fourteen days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within such time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

Date: September 21, 2021              /s/ Phillip J. Green
                                      PHILLIP J. GREEN
                                      United States Magistrate Judge